NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

COREY DION BECKHUM, *Appellant.*

No. 1 CA-CR 25-0345

FILED 08-10-2026

---

Appeal from the Superior Court in Maricopa County
No. CR2023-147296-001
The Honorable Tracey Westerhausen, Judge, *Retired*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Nova Law Group, PLLC, Phoenix
By Ryan Tait, Elizabeth Mullins
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins joined and Judge D. Andrew Gaona joined in part and concurred in the result. Judge D. Andrew Gaona also filed a concurring decision.

---

**F U R U Y A**, Judge:

¶1 Corey Beckhum appeals from his convictions and sentences, arguing there is insufficient evidence supporting his conspiracy conviction and the superior court erred in sentencing him for a higher-class felony. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Beckhum operated several unlicensed sober-living homes in the Phoenix area. The Arizona Healthcare Cost Containment System ("AHCCCS") does not cover the costs of residents living in such homes, even if they are licensed.

¶3 In September 2023, Beckhum called Recovery Syndicate — an intensive outpatient substance-abuse program in Chandler that accepts AHCCCS patients — and said he was looking for a treatment facility to which he could refer the people living in his homes. Beckhum told the Recovery Syndicate employee on the phone that other clinics typically paid him $200 to $300 per day per client. The call was suspicious to the employee because treatment centers typically call sober living homes to find housing for their patients, rather than the other way around. And under Arizona Revised Statutes ("A.R.S.") Section 13-3713, it is illegal to offer or accept any commission or other consideration for referring a patient to a clinic that provides medical or health-related services under AHCCCS.

¶4 Recovery Syndicate reported Beckhum's phone call to the Office of the Inspector General for AHCCCS. An undercover officer, purporting to be from Recovery Syndicate, contacted Beckhum and Beckhum told the officer he had twenty-five clients in his homes, six to fifteen of whom he needed to onboard with a clinic. Beckhum later increased this number to twenty-one clients. Beckhum and the officer agreed Beckhum would receive $250 per person per day for seven days a week for his referral and transportation of these clients. Beckhum, on his

company's behalf, later signed a contract that the officer presented him containing these terms. The contract described Beckhum's company and Recovery Syndicate as "partners in Mental Health Service Provision business" and outlined the terms of the voluntary and involuntary withdrawal of a partner.

**¶5** The officer then represented that he had arranged transportation for Beckhum's clients with another undercover officer and Beckhum sent the transportation person billing information for the clients living in his homes. Beckhum was arrested shortly after.

**¶6** A grand jury indicted Beckhum in October 2023 for Conspiracy to Commit Consideration for Patient Referral ("Count 1") and Consideration for Patient Referral ("Count 2"), both Class 3 felonies in violation of A.R.S. Sections 13-1003 and 13-3713. The case proceeded to trial in June 2025. After the State rested, Beckhum moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20 as to Count 1, which the superior court denied. The jury then found Beckhum guilty on both counts. The court sentenced Beckhum to 3.5 years as to Count 1 and 2.5 years as to Count 2, ordered to run concurrently.

**¶7** Beckhum timely appealed and we have jurisdiction pursuant to A.R.S. Sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. There Was Sufficient Evidence to Sustain Beckhum's Conspiracy Conviction.

**¶8** Beckhum argues that insufficient evidence supports his conspiracy conviction because the State did not establish that he knew his actions were illegal. We review de novo whether sufficient evidence supports a conviction, "viewing the evidence in a light most favorable to sustaining the verdict." *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011) (quoting *State v. Bible*, 175 Ariz. 549, 595 (1993)).

**¶9** Courts must enter a judgment of acquittal "if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Substantial evidence "is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *West*, 226 Ariz. at 562 ¶ 16 (citation modified). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996). Evidence is sufficient as a matter

of law when reasonable jurors could fairly debate whether the evidence establishes a particular fact. *State v. Davolt*, 207 Ariz. 191, 212 ¶ 87 (2004).

¶10　　　　　A person commits a Class 3 felony for the crime of consideration for referral of patient, client, or customer when:

> [A] person . . . knowingly offers, delivers, receives or accepts any rebate, refund, commission, preference or other consideration as compensation for referring a patient, client or customer to any individual, pharmacy, laboratory, clinic or health care institution providing medical or health-related services or items . . . if the consideration had a value of one thousand dollars or more.

A.R.S. § 13-3713(A)(1). A person is guilty of conspiracy to commit this crime if they intend to "promote or aid the commission of" such conduct, the intended conduct would constitute the crime, the defendant knew that such conduct was a crime, and the person "commits an overt act in furtherance of" such conduct. A.R.S. § 13-1003(A).

¶11　　　　　Here, the State presented substantial evidence that Beckhum knew his conduct was illegal. Beckhum had a compensation structure set up in which the funds for the operation came from the clinics that paid Beckhum for his referrals and he was aware that money came from AHCCCS. He did not charge patients for living in his homes and was not licensed to, nor could he, bill AHCCCS directly. Beckhum agreed to be paid $250 per person per day for seven days a week for referring and transporting his residents to Recovery Syndicate. When the undercover officer mentioned billing AHCCCS "for the whole day" despite agreement that Beckhum's residents would not arrive at the clinic until noon, Beckhum did not express any objection. To the contrary, he stated that he did not care what Recovery Syndicate did "on the back end." Evidence also established that Beckhum had done business before with three clinics that lost their ability to bill AHCCCS because of fraud concerns.

¶12　　　　　Beckhum contends the State's evidence indicates only that he was aware some of the clinics he dealt with may have committed fraud and were under scrutiny for their billing practices. However, Beckhum admitted he knew he was being paid from AHCCCS reimbursements and he could not receive money directly from AHCCCS. Beckhum's conversations with the officer show he was aware of challenges in arranging funding for his type of business because of "crackdowns," and that he was knowledgeable about this fraud that caused the increased

4

difficulty. Given this circumstantial evidence, jurors could have reasonably concluded his awareness of the fraud and his willingness to move forward with the arrangement to be paid with AHCCCS money was evidence he knew his actions were illegal.

**¶13**         In addition to the State's evidence, the jury also heard Beckhum's testimony that he was not aware his actions were illegal until after his arrest. Although such evidence contradicted the State's case-in-chief, by finding Beckhum guilty, the jury necessarily rejected his testimony and drew a negative inference from it. *See State v. Travis*, 26 Ariz. App. 24, 27 (App. 1976) ("The inference to be drawn from contradictory testimony . . . is permissive and is based upon the jury's finding of fact."). Thus, on this record, the court did not err in denying Beckhum's Rule 20 motion.

## II.     Beckhum Has Not Established Fundamental, Prejudicial Error Occurred When the Trial Court Sentenced Him for a Class 3 Felony on Count 1.

**¶14**         Beckhum argues the court erred in sentencing him on Count 1 as a Class 3 felony. Citing the jury's failure to make a finding on the amount involved in the conspiracy, Beckhum contends the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), under which any fact that increases a defendant's punishment must be determined by a jury.

### A.     Standard of Review

**¶15**         Because Beckhum did not object to the jury instructions or the verdict form at trial, we review this argument for fundamental error only. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018) (explaining failure to object to an error at trial forfeits the right to obtain appellate relief except when the error is fundamental and results in prejudice). To obtain relief, Beckhum must first demonstrate the court committed error. *State v. Hippensteel*, ___ Ariz. ___, ___, 590 P.3d 835, 839 ¶ 13 (2026). "If error exists, he must also show that under the totality of the circumstances, (1) the error went to the foundation of the case, (2) the error took from him a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* (citation modified). Our supreme court has clarified that *Apprendi* violations are generally trial error, not structural error, so the third prong is not at issue here. *See State v. Ring (III)*, 204 Ariz. 534, 553 ¶¶ 44–45 (2003) (concluding "failure to submit [an] element of capital murder to the jury does not constitute structural error"). Thus, Beckhum must also separately show prejudice. *Hippensteel*, 590 P.3d at 839 ¶ 13. "The defendant

bears the burden of persuasion at each step." *Escalante*, 245 Ariz. at 142 ¶ 21.

### B.    No *Apprendi* Violation

**¶16**        Beckhum argues he should have been sentenced to a Class 6 felony on Count 1—not a Class 3 felony—because the jury did not expressly determine the amount of consideration he attempted to acquire under Count 1. He contends the court engaged in impermissible judicial fact-finding by using the jury's finding as to the amounts involved as to Count 2 to sentence him on Count 1. Per Beckhum, this use violated *Apprendi*. Not so.

**¶17**        Under *Apprendi*, any fact other than a prior conviction "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Because Beckhum challenges his sentencing for his conspiracy conviction, we look to the requirements for conviction and sentencing under that charge. The relevant statute provides that "conspiracy is an offense of the same class as the most serious offense which is the object of or result of the conspiracy." A.R.S. § 13-1003(D). The relevant "object" of Beckhum's conspiracy was his violation of A.R.S. Section 13-3713 (i.e., Count 2), which, in turn, establishes different felony classifications based on the amount of consideration involved in an unlawful referral arrangement. Specifically, a violation is a Class 3 felony if the value of the consideration is over one thousand dollars but is a Class 6 felony if the value of the consideration is one hundred dollars or less. A.R.S. § 13-3713(A)(1), (3).

**¶18**        Here, the jury expressly found Beckhum's conduct implicated more than $1,000 in kickbacks as to Count 2 and did so beyond a reasonable doubt, as recorded in the verdict form for Count 2. True, the jury did not record a similar finding as to an amount specific to Count 1 on that verdict form. But such a finding was unnecessary because the conspiracy statute specifies that the classification of Count 1 is derived directly from the classification of the "object" offense; here, Count 2. *See* A.R.S. § 13-1003(D). The jury's undisputed finding that Count 2 involved consideration that exceeded $1,000 confirmed Count 2's classification as a Class 3 felony. *See* A.R.S. § 13-3713(A)(1). And because Count 1's classification is wholly dependent on Count 2's classification as the "object" offense, it too was automatically set as a Class 3 felony by the jury's same finding.

### C.      Failure to Show Prejudice

¶19      Beckhum also failed to meet his burden of establishing prejudice. He does not explain how a jury could have found he attempted to receive a kickback of over $1,000 for Count 2, but not found he was conspiring to do so per Count 1 under the exact same facts. Such a conclusion defies common sense and lacks support in the record.

¶20      Because Beckhum did not demonstrate the court erred under *Apprendi*, let alone fundamentally erred, and because he failed to demonstrate any prejudice, his arguments fail.

### CONCLUSION

¶21      We affirm.


**G A O N A**, Judge, concurring:

¶22      I concur in the Court's decision affirming Beckhum's conspiracy conviction and resulting sentence, but respectfully disagree with the majority's assertion, *supra* ¶ 11, that "the State presented substantial evidence that Beckhum knew his conduct was illegal."

¶23      At best, the State's evidence showed that Beckhum knew that: (1) he couldn't be directly reimbursed by AHCCCS and thus had to establish relationships with entities that could; (2) there was fraud in the industry at large (including some allegations against clinics he'd dealt with); and (3) AHCCCS was acting to combat that fraud. On those facts, no rational jury could conclude beyond a reasonable doubt that Beckhum knew his business operation was illegal. The superior court thus should have granted Beckhum's Rule 20 motion.

¶24      If that were all the evidence we could consider on appeal, this would be a dissent. But it's not, because when a Rule 20 motion "is denied at the close of the state's case, and the defendant goes forward and presents his case, he is deemed bound if deficiencies in the evidence are supplied." *State v. Savoy*, 109 Ariz. 531, 532 (1973); *State v. Bustamante*, 103 Ariz. 551, 553 (1968) (a defendant who proceeds in this way "waive[s] any error"). Under these circumstances, we review "the entire record, including any evidence defendant supplied." *State v. Nunez*, 167 Ariz. 272, 279 (1991). We would treat a similarly situated defendant who doesn't present any evidence differently—"[a] motion for acquittal made at the close of the

prosecution's case is tested on the sufficiency of the evidence *at that point*." *State v. Mathers*, 165 Ariz. 64, 66 (1990) (emphasis added).

¶25 For me, this "waiver rule," *see, e.g.*, *State v. Kinsella*, 796 N.W.2d 678, 682 ¶ 11 (N.D. 2011) (using this label), is dispositive. Beckhum testified in his own defense and told the jury that he didn't know that anything he'd done was illegal until after his arrest. He even said that he didn't believe what he was doing was "wrong" (even if not illegal) because he thought he was "helping people" by "trying to keep [them] off of drugs." The jury considered and rejected Beckhum's testimony when it convicted him of conspiracy. In the precedent's parlance, Beckhum "supplied" the missing evidence from which a rational jury could convict him.

¶26 Applying the waiver rule, I thus concur in the majority's decision to affirm Beckhum's conspiracy conviction. I do so with unease, however, because that rule forces a criminal defendant to choose between "resting and sacrificing the right to present a defense out of fear that his or her testimony may cure defects in the prosecution's case, or putting on such evidence and thereby possibly assisting the prosecution in proving its case." *In re Anthony J.*, 117 Cal. App. 4th 718, 732 (2004) (rejecting the waiver rule because, among other things, due process requires the State to "prove a prima facie case before the defendant is required to present any evidence in his or her defense"); *see also State v. Perkins,* 856 A.2d 917, 951 (Conn. 2004) (Katz., J., dissenting) ("[T]he waiver rule places a criminal defendant on the horns of an unfair dilemma, forcing him to choose between two equally fundamental rights: the right to present a defense, and the right to have the state bear the burden of proving each and every element of a charged crime beyond a reasonable doubt."). But until our Supreme Court says otherwise, I'm bound to hold that Beckhum's decision to present a defense waived his ability to obtain appellate review of whether the State proved its case-in-chief—effectively conditioning his constitutional right to appeal, *see* Ariz. Const. art. 2, ¶ 24, on foregoing the "due process right to 'a meaningful opportunity to present a complete defense,'" *Draper v. Gentry*, 255 Ariz. 417, 422 ¶ 16 (2023) (citation omitted).

